UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CHARLES A. KRANZ,

                Plaintiff,

          -against-

JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

                Defendant.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

01-CV-7727 (DLI)

**DORA L. IRIZARRY, U.S. District Judge:**

      Plaintiff Charles A. Kranz filed an application for Disability Insurance Benefits under the Social Security Act on August 28, 1998. Plaintiff's application was denied initially and on reconsideration. Following a hearing, the Administrative Law Judge (ALJ) found, on January 28, 2000, that plaintiff did not have a medically determinable impairment and, thus, was not disabled before his disability insured status expired on December 31, 1993. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on October 12, 2001. For the reasons stated below, this case is remanded to the Commissioner of Social Security for further proceedings.

**I.    Background and Plaintiff's Testimony**

      On his application for disability benefits, plaintiff states he has been disabled since March 11, 1988 because of diabetes, diabetic retinopathy, macular edema, and amputation of the right leg. Plaintiff was diagnosed with diabetes in May 1998 when his leg was amputated as a result of

diabetes complications. In identifying March 11, 1988 as the onset of his disability, plaintiff explains: "I've been sick for a very long time. I do not remember when I first became ill. I may have been very sick when I stopped working; that is why I am using that date as when my condition began." (Admin. R. at 61.)

Plaintiff reports seeking medical attention as early as 1984 for an enlarged heart (or "cardiomyopathy") condition but stopped some time in 1985 when he no longer had insurance and doctors told him that his only option was a heart transplant. Plaintiff testified that, around this time period, he suffered from severe fatigue and was constantly too tired to go to work. Plaintiff did not list his heart problem as a disabling condition on his original application for benefits but included it in his appeal letter. Plaintiff also testified that he has suffered from circulation and gallbladder problems.

Plaintiff was last employed as an accounting clerk for the Port Authority of New York and New Jersey, where he had worked for around fourteen years. Plaintiff states he was "forced" and "harassed" out of this job. Thereafter, plaintiff attempted to secure employment at a telephone company but was turned down for failing a medical examination. Plaintiff has been unable to obtain a copy of this report but testified that it indicated problems with his salt levels, liver enzymes, and blood tests.

## II.     Medical Evidence

### A. *Evidence Presented to the ALJ*

Between May 20, 1998 and June 18, 1998, plaintiff was hospitalized at Mercy Medical Center because of lethargy and uncontrolled diabetes. Dr. J. Travers saw plaintiff for the first time

one week prior to this emergency admission. From this examination, Dr. Travers recommended hospitalization upon noticing a penetrating ulcer in plaintiff's right ankle, but plaintiff refused. Plaintiff's condition thereafter worsened and, when plaintiff was finally admitted to the hospital, doctors amputated his right leg above the knee. Dr. Travers diagnosed plaintiff with diabetic ketoacidosis, necrotizing fasciitis of the right leg from strep viridans, chronic cholecystitis, diabetic neuropathy, hiatus hernia, and esophagitis. (Admin. R. at 106–08.)

Plaintiff was then referred to St. Charles Hospital for rehabilitation, where he was treated by Dr. Yeager. When plaintiff was discharged on July 3, 1998, Dr. Yeager instructed plaintiff to see an ophthalmologist and a medical doctor for diabetes management. (Admin. R. at 192–93.) Dr. Yeager submitted a medical assessment form, dated October 27, 1998, stating that plaintiff was incapable of lifting, carrying, standing, and walking, but that plaintiff was capable of sitting without limitation.

Dr. Michael Weiner, who saw plaintiff once on June 21, 1998, submitted a medical assessment form dated October 28, 1998. Dr. Weiner noted: "Duration of [plaintiff's] [d]iabetes unknown but severity of retinopathy is consistent with having diabetes more than 5 years." (Admin. R. at 204.)

Dr. Mark Melamed began treating plaintiff on March 1, 1999. By letter dated January 17, 2000, Dr. Melamed described plaintiff as having "a history of diabetes mellitus, being controlled on insulin," and detailed plaintiff's problems with diabetic retinopathy, for which he had laser surgery. Dr. Melamed reported plaintiff's vision as 20/400 in both eyes as of his most recent visit on October 4, 1999. (Admin. R. at 208.)

B. *Additional Evidence Submitted to the Appeals Council*

Plaintiff submitted several additional exhibits with his letter of appeal to the Appeals Council.[1] An invoice from Dr. Dresdale for an office visit on June 8, 1984 contains a diagnosis of pericarditis. (Admin. R. at 229.) Invoices from Woodmere Medical Associates, dated June 7 and 27, 1988 and July 29, 1988, show office visits, x-rays, and EKG, blood, liver, and lipid tests. (*Id*. at 216–19.) Other invoices from Woodmere Medical Associates, dated July 17, 1984 and January 5, 1985, are barely legible. According to plaintiff, these invoices contain diagnoses of viral and bacterial infections and "myositis of the chest wall." (*See id*. at 211, 230–31.)

Two notes from Dr. Daniel Beer of Cedarhurst Medical Associates, dated September 19, 2000 and April 24, 2001, indicate that plaintiff was diagnosed with diabetes, hypertension, leg edema, an enlarged heart, chronic anemia, and hyperlipidemia. (Admin R. at 214–15.) Dr. Beer also noted that plaintiff's diabetes "is a chronic disabling condition." (*Id*. at 215.) A note from Dr. Beer dated May 8, 2001 contains the following notation: "[Plaintiff] had cardiomegaly in 4/84 on chest XRay & currently also has cardiomegaly[.] I reviewed his prev[ious] XRay & is currently & was disabling in my opinion." (*Id*. at 232.)

By letter dated March 7, 2001, Dr. Ernesto S. Capulong of South Nassau Communities Hospital wrote that plaintiff was under his care for rehabilitation of the amputation of his right leg and in physical therapy for prosthetic training since May 2000. Dr. Capulong also wrote: "Although the diagnosis of this patient [having diabetes] was made in 1998, clinically, this has been going on for a long time. It is my opinion, this has been going on for at least ten years before it was

---

[1] The Second Circuit has held that such evidence "becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

discovered, resulting in the amputation of his leg." (Admin. R. at 213.)

**III.   Applicable Law**

A. *Standard of Review*

The district court reviews the Commissioner's decision to determine whether it is supported by substantial evidence and based on correct legal standards. *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the court's review of the record, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate where "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the application and regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (collecting Second Circuit cases).

"Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). In contrast, remand to further develop the record is unnecessary if the court has "no apparent basis to conclude that a more complete record

might support the Commissioner's decision" and it is clear that the plaintiff is entitled to benefits. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). In such case, the court may remand solely for the calculation of benefits. *Id*. The court may also "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

"Because the determination of eligibility for disability benefits is a nonadversarial proceeding, the Commissioner generally has an affirmative obligation to develop the administrative record." *Sharbaugh v. Apfel*, 2000 WL 575632, at *3 (W.D.N.Y.) (citing *Perez*, 77 F.3d at 47). The duty to develop the record extends to both the ALJ and the Appeals Council. *See,e.g.*, *Dimitriadis v. Barnhart*, 2004 WL 540493, at *9 (S.D.N.Y.); *Sharbaugh*, 2000 WL 575632, at *3. Where the record is incomplete or ambiguous, it is the Appeals Council's duty to obtain additional evidence or clarification from medical sources or remand the case for the ALJ to do the same. *See Sharbaugh*, 2000 WL 575632, at *3.

B. *Determination of Disability*

To qualify for disability insurance benefits, an individual must be "insured" for the benefits. 42 U.S.C. § 423(a). "Insured status" is calculated based on factors such as the individual's age and "quarters of coverage" accumulated from earned wages and self-employment income. 42 U.S.C. § 423©); 20 C.F.R. § 404.101(b). Plaintiff must establish that he was "disabled" within the meaning of the Social Security Act before the expiration of his insured status. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999). Evidence of a pre-existing impairment that reached disabling severity only after the expiration of a plaintiff's insured status is insufficient. *See id*. (citing *Arnone v.*

*Bowen*, 882 F.2d 34, 41 (2d Cir. 1989)).

An individual is "disabled" under the Social Security Act where there is "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof of showing disability by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5); *see also Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

Pursuant to 20 C.F.R. § 404.1520, there is a five-step process whereby the ALJ determines disability under the Social Security Act. If at any step, the ALJ makes a finding that the claimant is either disabled or not disabled, the inquiry ends there. At the first step, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers the medical severity of the claimant's impairment(s), without reference to age, education, or work experience. To be considered disabled, the claimant must have a physical impairment that, either individually or in conjunction with other such impairments, satisfies the duration requirement in § 404.1509. 20 C.F.R. § 404.1520©). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1. 20 C.F.R. § 404.1520(d). If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity." 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." *Id*. Finally, the ALJ determines whether the claimant could adjust to other work, considering factors such as age, education, and

work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to show that the claimant could perform the other work. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

IV.     **Analysis of the Commissioner's Decision**

The ALJ did not evaluate plaintiff's claim under the five-step process. Instead, the ALJ found that plaintiff was not entitled to disability benefits because plaintiff failed to show he was disabled prior to the expiration of his insured status on December 31, 1993.[2] (Admin. R. at 16.)

The ALJ was correct in stating "there is no documentation of any medical treatment that the claimant received prior to 1998. . . . Consequently, there is no evidence that the claimant had any medically determinable impairments, alone or in combination, that would impair the claimant's ability to perform work-related activities prior to 1998." (*Id.*) Indeed, the earliest medical record plaintiff submitted to the ALJ was dated May 20, 1998—noticeably after plaintiff's insured status expired on December 31, 1993. (*See id.* at 16.) Conceding that much of his evidence was not before the ALJ, plaintiff argues, however, that the Appeals Council erred in refusing to overturn the ALJ's decision, because the additional evidence submitted proved he was disabled before the expiration of his insured status.

The Appeals Council denied plaintiff's request for review because "neither the contentions [in his letter] nor the additional evidence provide[d] a basis for changing the Administrative Law Judge's decision." (*Id.* at 4.) The Appeals Council did not explain why it rejected the additional evidence. The court finds this vagueness troubling since the ALJ specifically denied plaintiff's claim

---

[2] It is undisputed that plaintiff's insured status expired on this date.

because "there [was] no documentation of any medical treatment that the claimant received prior to 1998," which was well after his inured status expired in 1993. (Admin R. at 16.) For the period prior to 1998, the ALJ only had Dr. Weiner's statement in 1998 that the severity of plaintiff's diabetic retinopathy was consistent with him "having diabetes more than 5 years." (Admin. R. at 204.) This statement only barely suggests that plaintiff had diabetes before the expiration of his insured status in 1993. However, plaintiff submitted stronger evidence to the Appeals Council: Dr. Capulong's statement in 2001 that plaintiff had likely been suffering from diabetes for at least ten years before it was discovered, i.e., since around 1988, when plaintiff stopped working. Although Dr. Capulong's statement does not establish plaintiff's disability, the ALJ should have had the opportunity to request further information from Dr. Capulong and develop plaintiff's medical history.

It is also significant that the additional evidence plaintiff submitted to the Appeals Council includes records from 1984 and 1988. Plaintiff cannot be determined disabled before he stopped working on March 11, 1988, because, according to the first step of the disability analysis, plaintiff was performing "substantial gainful activity." *See* 20 C.F.R. § 404.1520(b). However, the invoices from Woodmere Medical Associates are dated in June and July of 1988—after plaintiff's last day of employment. The invoices submitted by plaintiff do not show he was disabled, as they only list tests performed without results or explanations. But these invoices should have flagged to the Appeals Council that more investigation was needed, particularly since the invoices concerned a new impairment.

Indeed, based on the new evidence—including the invoices from 1984 and 1988 and the notes from Dr. Beer in 2001—plaintiff may also qualify for the cardiomyopathy impairment (section

4.08) listed in 20 C.F.R. pt. 404, subpt. P., App. 1. Section 4.08 impairments may be evaluated using the criteria in section 4.02: "Documented cardiac enlargement by appropriate imaging techniques . . . resulting in inability to carry on any physical activity, and with symptoms of inadequate cardiac output, pulmonary congestion, systemic congestion, or anginal syndrome at rest (e.g., recurrent or persistent fatigue, dyspnea, orthopnea, anginal discomfort)." Dr. Beer stated that x-rays of plaintiff's chest in 1984 showed that he had cardiomegaly, but the Appeals Council did not bother to obtain the x-rays or ask Dr. Beer for further detail. The ALJ had questioned plaintiff about continuous fatigue—notably, one of the requirements under section 4.02—but did not fully develop the record or consider a cardiovascular impairment, presumably because the ALJ focused on the lack of evidence prior to 1998. As a result of the Appeals Council's rejection of plaintiff's new evidence, the court finds there are gaps in the administrative record that support remand.

Remand is appropriate where the ALJ has not pursued a sufficiently detailed line of questioning. *See Lopez v. Apfel*, 2000 WL 633425, at *9–10 (S.D.N.Y.). Here, as in other cases, the fact that the transcript of the hearing before the ALJ was only ten pages long further suggests an insufficiently detailed record. *See id*. at 10. Also, in light of the new evidence, the ALJ would have been prompted to explore more fully plaintiff's reports of fatigue in relation to a cardiomyopathy impairment. Remand is further supported by the fact that the ALJ has not had the opportunity to consider the combined effect of multiple impairments. *See Schulte v. Apfel*, 2000 WL 362025, at *6 (W.D.N.Y.). Whereas the ALJ only focused on plaintiff's diabetes impairment, remand by the Appeals Council would have made combined impairments a possibility and resulted in a wider and more detailed investigation.

Accordingly, this case is remanded for further administrative proceedings, wherein the ALJ

shall consider the additional evidence plaintiff submitted to the Appeals Council,[3] as well any other evidence plaintiff may have, and whether, before the expiration of his insured status, plaintiff met the listed requirements for disability due to diabetes, cardiomyopathy, or a combination of the two impairments. Although not addressed above, the additional evidence presented to this court, attached to plaintiff's memorandum, should also be considered by the ALJ.[4]

V.     **Conclusion**

Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is denied insofar as it seeks reversal of the Commissioner's decision. Defendant's cross-motion for judgment on the pleadings is denied. The case is remanded to the Commissioner of Social Security for further administrative proceedings consistent with this decision.

SO ORDERED.

DATED:     Brooklyn, New York
           August 2, 2005

                                                       _____/s/_____
                                                            DORA L. IRIZARRY
                                                          United States District Judge___

---

[3] *See infra* Part II.B.

[4] The Commissioner suggests this new evidence is not material as required under 42 U.S.C. § 405(g). This provision also requires that, for the court to direct the Commissioner to consider new evidence, the evidence must be material and there must be good cause for failing to produce it earlier. Plaintiff cited prior difficulty in obtaining records in his letter to the Appeals Council. Especially given the age of this case and the fact that there are many questions for the ALJ to pursue on remand, the court finds it prudent to admit all evidence into the record.